UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA MYERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC, et al.,<br><br>Defendants. | Case No. 24-cv-02668-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND/OR STAY PROCEEDINGS**<br><br>Re: Dkt. No. 27 |

This is a putative class action brought by Plaintiffs Amelia Myers and Fatoumata Barry Yapo against their former employers, Defendants Gilead Sciences, Inc. and Kite Pharma, Inc. Myers and Yapo allege that Gilead and Kite Pharma utilized the wrong rate of pay to calculate overtime pay, and thus underpaid overtime in violation of state and federal law. Before the Court is Defendants' motion to dismiss and/or stay, which was heard on December 19, 2024.[1] Having read the papers filed by the parties and carefully considered the arguments therein and those made at the hearing, as well as relevant legal authority, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss and/or stay for the reasons discussed below.

**I.    BACKGROUND[2]**

Plaintiffs formerly worked for Gilead and Kite Pharma in California. FAC ¶¶ 6, 10. They were Cell Therapy Specialists and classified as non-exempt. FAC ¶¶ 7, 11. In addition to hourly wages, Defendants provided Plaintiffs with short-term and annual incentive awards and grants of

---

[1] Also pending before the Court is Plaintiffs' motion for issuance of notice to the putative class. *See* ECF 22. The Court will issue a separate order on that motion.

[2] The Court accepts Plaintiffs' allegations in the complaint as true and construes the pleadings in the light most favorable to them. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

1  Gilead restricted stock units ("RSUs") (collectively, "supplemental remuneration"). FAC ¶ 57.
2  The grant of incentive awards is determined by metrics such as employee performance and tenure
3  with the company, while RSUs are non-discretionary and granted primarily based on continued
4  employment. FAC ¶¶ 58-59. Plaintiffs allege they worked overtime, but that no supplemental
5  remuneration was included in the calculations of Plaintiffs' "regular rates," and that consequently,
6  Defendants failed to pay all overtime wages to which Plaintiffs were entitled under federal and
7  state law. FAC ¶¶ 62, 64.

8  On May 3, 2024, Plaintiffs filed the instant putative class action against Defendants
9  challenging their alleged underpayment of overtime wages. ECF 1. Plaintiffs allege violations of
10 the California Labor Code and Unfair Competition Law ("UCL") (collectively, the "state law
11 claims") on behalf of all non-exempt employees working for Defendants in California, as well as
12 violations of the Fair Labor Standards Act ("FLSA") on behalf of all current and former non-
13 exempt employees of Defendants in any state. *Id.* On June 5, 2024, Plaintiffs filed a motion for
14 issuance of court-authorized notice. ECF 22. On June 21, 2024, Defendants moved to dismiss
15 Plaintiffs' complaint. ECF 27. On July 19, 2024, Defendants opposed Plaintiffs' motion for
16 issuance of court-authorized notice. ECF 32. On October 15, 2024, the parties stipulated to
17 Plaintiffs' filing of an amended complaint adding a Private Attorneys General Act ("PAGA")
18 claim without impacting Defendants' motion to dismiss. ECF 39. On October 25, 2024, Plaintiffs
19 filed the operative First Amended Complaint ("FAC"). ECF 42.

20 **II.     DISCUSSION**

21 Defendants move to dismiss Plaintiffs' FAC, arguing Plaintiffs have failed to state a
22 plausible claim for unpaid overtime, and that consequently their claims all fail. Defendants further
23 argue any surviving claims should be stayed in light of ongoing state court litigation involving
24 similar parties, facts, and claims to the instant action. The Court first considers whether staying
25 any of Plaintiffs' claims is appropriate. It then examines whether any unstayed claims survive
26 Defendants' motion to dismiss.

27 **A. Motion to Stay**

28 Defendants argue that Plaintiffs' claims should be stayed pending final resolution of an

1  ongoing action in state court, *Herman Pappoe v. Kite Pharma, Inc., et al.*, No 24STCV02259
2  (L.A. Super. Ct.), pursuant to the *Colorado River* doctrine or the Court's inherent authority in
3  order to avoid duplication of efforts and the risk of conflicting judgments.[3]
4        Federal courts may abstain from exercising jurisdiction where "considerations of wise
5  judicial administration, giving regard to conservation of judicial resources and comprehensive
6  disposition of litigation can support a stay of federal litigation in favor of parallel state
7  proceedings." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 836 (9th Cir. 2023) (citing *Colorado*
8  *River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (internal quotations
9  omitted)). Stays under *Colorado River* are "based on administrative concerns and prioritize
10  efficient 'disposition of litigation' through the wise deployment of 'judicial resources.' " *Id.*
11  Courts in the Ninth Circuit assess the following factors to determine whether a *Colorado River*
12  stay is appropriate:

> (1) which court first assumed jurisdiction over any property at stake;
> (2) the inconvenience of the federal forum; (3) the desire to avoid
> piecemeal litigation; (4) the order in which the forums obtained
> jurisdiction; (5) whether federal law or state law provides the rule of
> decision on the merits; (6) whether the state court proceedings can
> adequately protect the rights of the federal litigants; (7) the desire to
> avoid forum shopping; and (8) whether the state court proceedings
> will resolve all issues before the federal court.

18  *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). " 'Any doubt as to
19  whether a factor exists should be resolved against a stay,' " *id.* at 979, but the factors "are not a
20  'mechanical checklist'; indeed, some may not have any applicability to a case," *Seneca Ins. Co.,*

---

[3] Defendants filed a request for judicial notice of the original *Pappoe* complaint along with their motion to dismiss and/or stay, ECF 28, and filed a request for judicial notice of the second amended complaint in *Pappoe* along with their reply in support of their motion, ECF 34. On December 13, 2024, Defendants submitted a notice of pendency of the *Pappoe* action, attaching the third amended complaint that was filed in Los Angeles Superior Court on December 5, 2024. Plaintiffs do not challenge the Court's consideration of any of the complaints. The Court finds it is appropriate to take judicial notice of the *Pappoe* complaints because judicial notice is properly taken of matters of public record, including court filings and orders from other cases. *See Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) (finding that it is proper to take judicial notice of materials from a proceeding in another tribunal), *overruled in part on other grounds, Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010).

3

*Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). "Courts generally rely on the state of affairs at the time of the *Colorado River* analysis." *R.R. St.*, 656 F.3d at 982.

As an initial matter, the Court must determine whether the two actions are "substantially similar" such that the *Colorado River* doctrine applies. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Actions are substantially similar when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Gallagher v. Dillon Grp. 2003-I*, 2010 WL 890056, at *3 (N.D. Cal. Mar. 8, 2010). Plaintiff Herman Pappoe worked for Gilead and Kite in Los Angeles County and, like Plaintiffs Myers and Yapo, was a non-exempt Cell Therapy Specialist. ECF 52-1 at 3. Pappoe seeks to represent a class of "[a]ll non-exempt employees of [Gilead or Kite] who worked in California [from January 29, 2020] through the date set by the Court." *Id.* at 4. Because Plaintiffs Myers and Yapo were employed by Gilead and Kite in California from May 2021 to August 2023, and from June 2018 to February 2024, respectively, they fall within Pappoe's proposed class. While the named plaintiffs are not the same, there is significant overlap in the putative classes, and the two actions are against the same defendants.

Moreover, two actions are substantially similar where they "arise out of the same alleged conduct and seek to vindicate the same rights." *Goodin v. Vendley*, 356 F. Supp. 3d 935, 944 (N.D. Cal. 2018) (citing *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1170 (9th Cir. 2017)). "Exact parallelism" between the two actions is not required. *Nakash*, 882 F.2d at 1416. Pappoe filed a putative class action against Gilead and Kite in Los Angeles Superior Court alleging violations of the California Labor Code and seeking penalties under PAGA. ECF 52-1 at 3. Pappoe alleges that Gilead and Kite omitted the value of RSUs from the regular rates of pay hourly, non-exempt employees who were eligible for overtime compensation. *Id.* at 6. Pappoe further alleges wage statement and final pay violations, as well as a UCL claim based on Gilead and Kite's alleged Labor Code violations. *Id.* at 6-11. Pappoe raises all state law causes of action raised in the instant case, as well as additional state law claims, but does not raise a FLSA claim. While there is not exact identity of claims, the two cases are based on the same facts and both involve the same legal question to be resolved: whether Defendants underpaid its hourly, non-exempt employees the overtime they were owed. Accordingly, the Court finds that, while not

1  identical, the cases are substantially similar. *See Goodin*, 356 F. Supp. 3d at 944 (finding
2  substantial similarity between federal and state actions where factual basis for claims arose from
3  the same conduct, despite plaintiffs' entitlement to different remedies in each action); *Alila-Katita*
4  *v. U.S. Bank Nat'l Ass'n*, 2017 WL 8948735, at *2 (N.D. Cal. May 2, 2017) (finding substantial
5  similarity where federal and state actions involved many of the same plaintiffs, the same
6  defendant, wage and hour violations relating to the same position, despite differences in named
7  parties and time periods at issue). The Court thus applies the *Colorado River* doctrine to
8  determine whether staying any of Plaintiffs' claims is appropriate.

9        The Court first examines the *Colorado River* factors that most strongly weigh in favor or
10  against a stay, beginning with the third factor. "Piecemeal litigation occurs when different
11  tribunals consider the same issue, thereby duplicating efforts and possibly reaching different
12  results." *Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258
13  (9th Cir. 1988). But "[t]he mere possibility of piecemeal litigation does not constitute an
14  exceptional circumstance." *R.R. St.*, 656 F.3d at 979. Rather, "the case must raise a 'special
15  concern about piecemeal litigation,' which can be remedied by staying or dismissing the federal
16  proceeding." *Id.* (internal citation omitted).

17        Plaintiffs argue that this factor weighs against a stay because *Pappoe* makes only "brief
18  reference" to the exclusion of supplemental remuneration in employees' regular rates of pay, and
19  accordingly it is "not clear how much of a focus those claims will be in that case." ECF 32 at 18,
20  21. At the hearing, Plaintiffs again emphasized that the issue of supplemental remuneration is
21  squarely in dispute in this case, whereas it is just one of several issues raised in *Pappoe*. However,
22  while *Pappoe* includes claims not raised by Plaintiffs here, and the supplemental remuneration
23  issue is not the singular issue in that case, it does not necessarily follow that the issue is unlikely to
24  be addressed by the state court. As the state law claims are identical in the two actions, the Court
25  finds the third factor weighs in favor of a stay of those claims given the "inherent risk of
26  inconsistent results if both courts proceed with these claims at the same time." *Goodin*, 356 F.
27  Supp. at 946. Should the resolution of the state court leave any of Plaintiffs' state law claims
28  unresolved, Plaintiffs may seek to revive those claims in this Court. *See Attwood v. Mendocino*

5

*Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)) (explaining that a stay "ensures that the federal forum will remain open if 'for some unexpected reason the state forum does turn out to be inadequate' ").

Nonetheless, the Court finds the third factor weighs against staying Plaintiffs' FLSA claim. The factual bases for Plaintiffs' state law claims and FLSA claim are similar, if not identical, such that certain litigation and discovery efforts may be duplicated in the determination of the state law claims and the California collective members' FLSA claims. But those efforts will need to be undertaken for the collective members outside of California. Therefore, Defendants have "not identified extraordinary circumstances with regards to the separate litigation of the FLSA and state law claims that would justify a stay" of the FLSA claim. *Hernandez v. Sephora USA, Inc.*, 2017 WL 956653, at *13 (N.D. Cal. Mar. 13, 2017). While some courts have found that this factor favors a stay where plaintiffs elected not to raise a FLSA claim in a state court action, *see Gintz v. Jack in the Box, Inc.*, 2006 WL 3422222, at *5 (N.D. Cal. Nov. 28, 2006) (finding that "[b]y failing to bring all of her claims in her State court litigation" plaintiff's actions "create[d] the kind of piecemeal litigation that the *Colorado River* doctrine was developed to prevent," which weighed in favor of a stay); *see also Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1022 (N.D. Cal. 2008) (same), Plaintiffs here are not named parties to *Pappoe* and consequently should not be disadvantaged by Pappoe's decision not to raise a FLSA claim there.

Next, under the fourth factor, the Court considers the order in which each court obtained jurisdiction. "In determining the order in which the state and federal courts obtained jurisdiction, district courts are instructed not simply to compare filing dates, but to analyze the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand.' " *Seneca Ins. Co., Inc.*, 862 F.3d at 843 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 1). As this action was filed three months after *Pappoe*, and because *Pappoe* has conducted some discovery, the Court finds this factor favors a stay. *See Goodin*, 356 F. Supp. at 946 (finding the fourth *Colorado River* factor weighed in favor of a stay where the state action was filed about five months before the federal action and some discovery had occurred in the state action). However, this factor does not strongly favor Defendants, because while *Pappoe* is further along, it is not

6

significantly so. Indeed, Pappoe just recently amended his complaint and added a second plaintiff, and ultimately, both actions are still in relatively early stages of litigation.

As to the fifth factor, the presence of federal law issues "must always be a major consideration weighing against surrender" of jurisdiction, while the presence of state law issues "may weigh in favor of that surrender only 'in some rare circumstances' " involving "routine issues of state law." *R.R. St.*, 656 F.3d at 981 (quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990)). However, "the source-of-law factor has less significance" where "the federal courts' jurisdiction . . . is concurrent with that of the state courts." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 26. While employees may bring FLSA claims in "any Federal or State court of competent jurisdiction," 29 U.S.C. § 216, *Pappoe* does not include a FLSA claim, and as Plaintiffs are not named parties in *Pappoe*, they do not have the ability to raise that claim there. Thus, this factor weighs against a stay of the FLSA claim. *See Hernandez*, 2017 WL 956653, at *5 ("[G]iven the federal nature of this action and the fact that the California FLSA claim has not been brought in any of the state court proceedings, this factor still weighs against a stay.").

Next, the Court considers the sixth factor: whether the state court proceedings can adequately protect the rights of the federal litigants. A stay of the FLSA claim would altogether "ignore[] the interests of the [collective] members [in] the remaining 49 states" other than California. *See id.* ("This factor weighs strongly against a stay."). Defendants have expressed they are amenable to stipulating to tolling the FLSA claim. ECF 34 at 17. However, even if the FLSA collective members could return to this Court to lift the stay of the FLSA claim following conclusion of proceedings in *Pappoe*, this would only be possible after a potentially years-long delay. This delay raises concerns regarding evidence preservation for the federal litigants not implicated by *Pappoe*'s state law claims. The Court finds this factor weighs against a stay of the FLSA claim.

The eighth factor is whether the state court proceeding will resolve all issues in the federal action. This factor weighs in favor of staying the state claims. *Pappoe* is "an adequate vehicle for the complete and prompt resolution of" the state law claims. *See Gulfstream Aerospace Corp. v.*

*Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (internal quotations omitted). However, because the *Pappoe* plaintiffs do not raise a FLSA claim, that case will therefore not resolve Plaintiffs' FLSA claim or that of the putative collective members. This factor thus weighs in favor of allowing the FLSA claim to proceed here.

The remaining *Colorado River* factors are neutral or inapplicable. The Court finds the second factor – convenience of the federal forum – is neutral here. *Pappoe* was filed in Los Angeles County, where Plaintiffs worked and where Defendant Kite is primarily located. However, Defendant Gilead is headquartered within this District, in Foster City. FAC ¶ 15. Defendants do not elaborate on the burden they face by having to litigate here, other than noting that the two courts are approximately 400 miles apart. ECF 27 at 22. The seventh factor – the desire to avoid forum shopping – is also neutral here. Defendants do not accuse Plaintiffs of forum shopping, and the Court has no reason to believe forum shopping has occurred. Plaintiffs argue the absence of evidence of forum shopping weighs in their favor, noting that many cases in which courts considered the forum shopping factor involved the same plaintiffs bringing both the state court action and the subsequent federal court action. ECF 32 at 22. However, the Ninth Circuit has determined it was "unclear whether this factor weighed against a *Colorado River* stay" where there was a "lack of factual findings by the district court and uncertainty as to whether [the] alleged misconduct amount[ed] to improper forum shopping." *Travelers*, 914 F.2d at 1371; *see also Goodin v. Vendley*, 356 F. Supp. 3d 935, 947 (N.D. Cal. 2018) (determining that where plaintiffs appeared to have "acted within [their] rights in filing a suit in the forum of [their] choice," forum shopping factor was neutral). Finally, the first factor concerns property disputes, and as no such dispute exists here in this wage and hour action, this factor is irrelevant. *R.R. St.*, 656 F.3d at 978.

Balancing these factors, the Court concludes that the *Colorado River* doctrine favors staying the state law claims, as the factors related to the duplication of efforts and risk of conflicting decisions weigh heavily in favor of allowing the state court to resolve the identical state claims at issue here. However, recognizing the balance of the *Colorado River* factors is "heavily weighted in favor of the exercise of jurisdiction," the Court finds it proper to decline to

stay the FLSA claim. *See Moses H. Cone Memorial Hosp.*, 460 U.S. at 22. There is less risk of wasting resources and creating conflicting precedent where the state law claims and FLSA claims are allowed to proceed simultaneously. However, there is a greater risk of harm to the federal litigants, who would be forced to wait to bring their FLSA claim, and particularly to the non-California collective members, who are not implicated at all by *Pappoe*. Accordingly, the Court **STAYS** Plaintiffs' state law claims but does not stay Plaintiffs' FLSA claim.[4]

### B. Motion to Dismiss

Because the Court finds it is proper to stay Plaintiffs' state law claims, it only considers whether Plaintiffs' surviving FLSA claim withstands Defendants' motion to dismiss.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

[4] Defendants argue that if the Court declines to stay Plaintiffs' claims pursuant to the *Colorado River* doctrine, it should nevertheless issue a stay based on its inherent power to manage its docket. ECF 27 at 24. However, because simultaneous federal and state actions are involved, the Court may only stay or dismiss a federal case in favor of related state proceedings where the federal action seeks only declaratory relief or if the *Colorado River* factors support a stay. *See Ernest Bock*, 76 F.4th at 842.

1    Defendants' primary argument for dismissal is that Plaintiffs' claims fail under *Landers v.
2    Quality Communications, Inc.* because Plaintiffs have not alleged a specific workweek in which
3    they worked overtime and were not afforded all overtime pay to which they were entitled. 771
4    F.3d 638, 644-45 (9th Cir. 2014). In *Landers*, the court found the plaintiff failed to state a claim
5    as he only made "generalized allegations" that his employer underpaid overtime wages but did not
6    provide details about actually having been denied those overtime wages himself. *Id.* at 646. The
7    court explained the plaintiff must "be able to allege facts demonstrating there was at least one
8    workweek in which [he] worked in excess of forty hours and w[as] not paid overtime wages." *Id.*
9    645-46.

10   However, *Landers* does not create a special pleading standard for wage and hour cases –
11   such cases "are subject to the same Rule 8 pleading standard as all other claims not sounding in
12   fraud or mistake." *Cook v. Matrix Absence Mgmt., Inc.*, 2024 WL 3077160, at *3 (N.D. Cal. June
13   20, 2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Rather, the *Landers* court
14   applied the Rule 8 pleading standard to the wage and hour context and concluded that Landers had
15   not alleged sufficient facts to state a FLSA claim because it was not clear from his pleadings
16   whether he ever worked more than forty hours in a single workweek. *Landers*, 771 F.3d at 646.

17   Here, Plaintiffs allege that "in the course of [Plaintiffs'] employment, [they] worked more
18   than 40 hours a week," FAC ¶¶ 7, 11, and that Plaintiffs and the putative class members "regularly
19   work in excess of 40 hours in each workweek," FAC ¶ 54. Plaintiffs allege they were non-exempt
20   from overtime; that they worked overtime; and that Defendants did not properly include
21   supplemental remuneration into the calculations of their rates of pay. FAC ¶¶ 7, 11, 38, 54.
22   Therefore, *every time* Plaintiffs worked overtime, they were underpaid. *See Tan v. GrubHub*, 171
23   F. Supp. 3d 998, 1006 (N.D. Cal. 2016) ("[T]he allegation is that because GrubHub did not treat
24   Plaintiffs as employees, they *never* reimbursed the identified expenses. As Plaintiffs have
25   identified the expenses that Defendants failed to reimburse, the claim can proceed."). Contrary to
26   Defendants' assertions, Plaintiffs do not allege that Defendants merely had a practice of
27   underpaying overtime without alleging that they themselves worked overtime. *See Cook*, 2024
28   WL 3077160, at *3 (finding allegations sufficient to survive motion to dismiss where plaintiff

United States District Court
Northern District of California

10

asserted "that *she* was not given required meal and rest breaks and explains why she did not receive these breaks").

To be sure, Plaintiffs' allegations about their own overtime work are not especially detailed. But they need not be. Plaintiffs aver that they worked overtime, and – taking as true their allegations that Defendants failed to accurately calculate employees' regular rates of pay – that means when they worked overtime they were not paid the full overtime wages they were owed. "Whether this actually happened is a factual question [Plaintiffs] must prove at a later stage. But at the pleading stage [their] allegations suffice." *See Cook*, 2024 WL 3077160, at *3. The Court disagrees with Defendants' argument that Plaintiffs' allegations make it "impossible to assess whether Plaintiffs have even potentially suffered a harm that the Court could redress." ECF 34 at 9. Here, relying on "judicial experience and common sense," the Court finds the factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 664.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss and/or stay. The Court **GRANTS** Defendants' motion to stay Plaintiffs' state law claims pending further proceedings in *Herman Pappoe v. Kite Pharma, Inc., et al.*, No 24STCV02259 (L.A. Super. Ct.). The Court **DENIES** Defendants' motion to stay Plaintiffs' FLSA claim. The Court **DENIES** Defendants' motion to dismiss Plaintiffs' FLSA claim. The Court **DENIES AS MOOT** Defendants' motion to dismiss Plaintiffs' state law claims. Should the stay of Plaintiffs' state law claims be lifted, Defendants may revive their motion to dismiss those claims. The parties **SHALL** meet and confer on a schedule for proceeding with Plaintiffs' FLSA claim and **SUBMIT** a joint proposed case schedule within 21 of this order.

**IT IS SO ORDERED.**

Dated: January 21, 2025

A<small>RACELI</small> M<small>ARTÍNEZ</small>-O<small>LGUÍN</small>
**United States District Judge**

11