UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA MYERS, et al., <br>     Plaintiffs, <br> v. <br> GILEAD SCIENCES, INC, et al., <br>     Defendants. | Case No. 24-cv-02668-AMO <br><br> **ORDER GRANTING MOTION FOR COURT-AUTHORIZED NOTICE** <br><br> Re: Dkt. No. 22 |

Before the Court is Plaintiffs Amelia Myers and Fatoumata Barry Yapo's motion for court-authorized notice to the collective. ECF 22. This Order assumes familiarity with the facts and procedural history of the case. Plaintiffs' motion is fully briefed and was heard before this Court on February 6, 2025. Having read the papers filed by the parties and carefully considered the arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Plaintiffs' motion, subject to the modifications discussed herein.

**I. DISCUSSION**

Plaintiffs argue they meet the lenient standard for conditional certification and that the Court should authorize notice to the collective. Defendants argue conditional certification is improper because Plaintiffs have not met their evidentiary burden and Plaintiffs' proposed collective is vague and overbroad. Defendants additionally contend that the Court should not authorize notice because the method and substance of Plaintiffs' proposed notice contain certain defects. The Court first considers whether conditional certification of the collective is proper, and concluding it is, takes up the form of notice to the collective.

//

//

### a. Legal Standard

Under the Fair Labor Standards Act ("FLSA"), "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018); 29 U.S.C. § 216(b).

FLSA plaintiffs can seek "dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective . . . satisfies the 'similarly situated' requirement of section 216(b)." *Campbell*, 903 F.3d at 1109. "Similarly situated" means "alike with regard to some material aspect of their litigation . . . in ways that matter to the disposition of their FLSA claims." *Id.* at 1114. "[W]hat matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having potential to advance these claims, collectively, to some resolution." *Id.* at 1115 (emphasis in original). The standard is lenient, but it is the plaintiff's burden to present "at least some evidence to support the 'substantial allegations' in the complaint" that the collective members "were together the victims of a single decision, policy, or plan." *Litvinova v. City & Cnty. of San Francisco*, 2019 WL 1975438, at *2-4 (N.D. Cal. Jan. 3, 2019). Courts' analyses are "typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. "Determining whether a suit properly may be maintained as a FLSA collective action is within the discretion of the court." *Litvinova*, 2019 WL 1975438, at *2; *see also Campbell*, 903 F.3d at 1110 (citing *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 174 (1989) ("[T]he proper means of managing a collective action – the form and timing of notice, the timing of options, the extent of discovery before decertification is addressed – is largely a question of 'case management,' and thus a subject of substantial judicial discretion.")).

### b. Conditional Certification

Plaintiffs seek conditional certification of a collective defined as "[a]ll persons who worked for Gilead as non-exempt employees who were paid incentive awards and/or granted RSUs [restricted stock units], and who recorded over 40 hours per week in at least one workweek

between May 3, 2021 and the present." ECF 22-8.

Plaintiffs argue the putative collective members are similarly situated. They support their motion with a declaration from each named Plaintiff; a page from Gilead's website titled "Compensation, Benefits and Wellbeing"; several Gilead job postings; Gilead's Securities and Exchange Commission (SEC) incentive plan summary; and sample earnings statements. *See* ECF 22. Plaintiffs contend that these "together demonstrate Defendants' uniform policy of failing to include supplemental remuneration paid to Collective Members in the regular rate calculation for overtime wages." *Id.* at 9.

The Court agrees. In their declarations, Myers and Yapo attest they worked as hourly, non-exempt employees during the three-year FLSA statutory period, that they received restricted stock units ("RSUs") that vested during that period, and that they were subject to Defendants' policy of not including the value of the vested RSUs in overtime pay calculations, *see* ECF 22-2, 22-3, and their sample earnings statements confirm they received restricted stock and worked overtime, *see* ECF 22-7. The remaining submissions evidence that Defendants award supplemental remuneration on a company-wide level that amounts to a single policy or plan. The SEC Incentive Plan Summary describes the purposes and structure of the incentive compensation plan, noting that "unless otherwise determined by the Plan Administrator, all Company employees . . . are eligible to participate," and that payment is based "on the attainment of corporate and individual performance goals and metrics," which are "establish[ed] in writing . . . generally within 90 days of the beginning of the performance year." ECF 22-6. The page from Gilead's website titled "Compensation, Benefits and Wellbeing" describes that Gilead is a "pay-for-performance company" with "base pay, bonus and stock awards." ECF 22-4. Thus, the Court finds that "Plaintiffs' pleadings and supporting evidence are sufficient to meet the 'lenient' burden required to demonstrate that Plaintiffs and putative collective action members shared similar job duties and a similar compensation scheme." *See Herrera v. EOS IT Mgmt. Sols., Inc.*, 2020 WL 7342709, at *7 (N.D. Cal. Dec. 14, 2020) (finding burden met where plaintiffs provided five declarations that, despite being "repetitive and uniform," supported plaintiffs' allegations, offered documents corroborating the declarations, including job offer letters with salary details and a job

3

1  description outlining the duties of the relevant role).

2      Defendants argue Plaintiffs have not shown conditional certification is proper for three
3  reasons. First, Defendants argue Plaintiffs' proffered evidence is insufficient. Defendants insist
4  Plaintiffs' declarations "are entitled to no evidentiary weight" as they are "virtually identical and
5  repeat vague speculations." ECF 29 at 17. However, as the relevant inquiry is "simply whether
6  plaintiffs have made an adequate threshold showing," courts have rejected arguments that
7  declarations submitted in support of conditional certification are "boilerplate." *See Costa v. Apple,*
8  *Inc.*, 2023 WL 8101980 (N.D. Cal. Nov. 21, 2023) (citing *Gonzalez v. Charter Commc'ns, LLC*,
9  2020 WL 8028108, at *4 (C.D. Cal. Dec. 4, 2020)).

10      The cases Defendants cite in arguing Plaintiffs have not met their evidentiary burden are
11  easily distinguishable. In *Litvinova v. City and County of San Francisco*, the court denied
12  conditional certification. 2019 WL 1975438, at *4 (N.D. Cal. Jan. 3, 2019). Noting that "[a]
13  handful of declarations may suffice" to satisfy the burden of showing Plaintiffs are "similarly
14  situated," the court explained that the plaintiff provided "only averments in her complaint and her
15  own declaration, the latter of which [did] not even address whether other members of the
16  collective action worked overtime." *Id.* at *5. Moreover, in *Rivera v. Saul Chevrolet, Inc.*, 2017
17  WL 3267540, at *6 (N.D. Cal. July 31, 2017), the court denied certification where the plaintiff
18  submitted only her own declaration, did not allege that other plaintiffs worked more than 40 hours
19  per week without overtime pay, and did not identify the "single decision, policy, or plan"
20  impacting the putative collective members. Here, Plaintiffs have submitted two declarations,
21  alleging in both that the declarants worked over 40 hours in a workweek during which they had
22  been awarded an incentive award and that they believed it to be a policy of Defendants to omit the
23  bonuses and RSUs for other hourly employees. ECF 22-2 at 3; ECF 22-3 at 3-4. As it is "not the
24  Court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate
25  merits" at the notice stage, *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1034 (N.D. Cal. 2017),
26  whether there was actually a company-wide policy will be determined later in the proceedings
27  with the aid of discovery. Plaintiffs have sufficiently shown the putative collective members are
28  "alike . . . in ways that matter to the disposition of their FLSA claims." *Campbell*, 903 F.3d at

United States District Court
Northern District of California

1114.

Second, Defendants argue the Court should not conditionally certify the collective because some of its members signed arbitration agreements and, thus, Plaintiffs are not similarly situated to them. ECF 29 at 19. However, courts regularly conclude that conditional certification of a proposed collective is proper even where some members are compelled to arbitrate their dispute. *See Costa*, 2023 WL 8101980, at *5-6 (collecting district court cases throughout the Ninth Circuit). "Although it may be true that [some] individuals will ultimately be unable to participate in this case" due to arbitration agreements, "it is not appropriate to exclude potential opt-in members from the conditionally certified collective action at the notice stage . . . because the focus of the Court's inquiry at the notice stage is on whether there is a common policy or plan that connects the claims of the putative collective action." *Herrera v. EOS IT Mgmt. Sols., Inc.*, 2020 WL 7342709, at *9 (N.D. Cal. Dec. 14, 2020). "[T]he fact that there is an arbitration agreement goes to Defendants' defenses, not the common policy" and therefore "enforceability of the arbitration agreements is better reserved for the step two determination, not step one." *Conde v. Open Door Mktg.*, LLC, 223 F. Supp. 3d 949, 969 (N.D. Cal. 2017). Here, the enforceability of the arbitration agreements has not yet been determined, and Defendants allege that only 241 of the 1,771 potential collective members are subject to arbitration agreements. This differs from cases where courts have denied conditional certification due to the existence of arbitration agreements. *See, e.g.*, *Droesch v. Wells Fargo Bank, N.A.*, 2021 WL 2805604, at *2 (N.D. Cal. July 6, 2021) (denying conditional certification where the defendant had shown that 27,000 out of 34,000 employees had signed the same arbitration agreement, which the court had determined was binding over the claims). The Court thus finds conditional certification is proper notwithstanding the existence of arbitration agreements for some members of the collective.

Third, Defendants argue the proposed collective definition is impermissibly vague and overbroad. They argue the proposed definition is vague because it fails to identify or define "incentive award," thus preventing Defendants, the Court, and proposed collective members from ascertaining eligibility. Given Defendants' use of "incentive award" in their materials, *see, e.g.*, ECF 22-6 (Gilead's "Corporate Annual Incentive Plan"), the Court finds Defendants' vagueness

assertion somewhat disingenuous.  Moreover, Plaintiffs clarified at the hearing that "incentive award" is used to include any remuneration granted under Defendants' incentive plan, as Defendants used the term.  This reassures the Court that putative collective members will not be confused by the language and will readily know whether they have received such remuneration.  Defendants also argue that the proposed definition is overbroad, as it may capture employees who would not have a timely claim under Plaintiffs' theory of the case. ECF 29 at 19.  In response, Plaintiffs contend this is unlikely to be true for any collective member, but if it were, Defendants could easily identify that person and move for dismissal of their claims.  ECF 33 at 12.  The Court concludes the collective definition can be narrowed to more precisely capture eligible individuals without jeopardizing collective members' ability to identify their eligibility.  The Court thus conditionally certifies the collective, with the following modified collective definition: "All persons who worked for Gilead or Kite as overtime eligible employees and (1) were granted an RSU award, had such RSU award vest after May 3, 2021, and recorded more than 40 hours in a week in at least one workweek between the date that RSU award was granted and the date that RSU award vested; or (2) received an incentive award after May 3, 2021, and recorded more than 40 hours in a week in at least one workweek during a period in which the award was earned."  Should the parties wish to stipulate to different language defining "incentive awards" or the required timing for earning awards, they may do so.

### c. Notice and Distribution Plan

Having found conditional certification of the collective appropriate, the Court now considers Plaintiffs' request to notify the putative members.  Putative collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170.  Plaintiffs request the Court approve their proposed notice and authorize its dissemination to the collective, and require Defendants to produce certain information regarding putative collective members.  The Court first considers the substance of Plaintiffs' proposed notice, then turns to their proposed method of disseminating it, before ultimately authorizing notice subject to the modifications detailed below.

### i. Substance of Notice

Along with their motion, Plaintiffs submitted a proposed notice, Consent to Join ("CTJ") form, and email reminder. ECF 22-8, ECF 22-10. Defendants object to several aspects of the substance of these proposals. First, Defendants take issue with the notice stating it is "an important legal document" (ECF 22-10 at 2) and "an important notice" (ECF 22-10 at 3). ECF 29 at 27. Courts facilitating notice of a collective action "must be scrupulous to respect judicial neutrality [by] avoid[ing] even the appearance of judicial endorsement of the merits." *Hoffman-La Roche*, 493 U.S. at 174. Defendants argue use of the word "important" risks the appearance of judicial endorsement, and "all that is necessary is an objective statement that the Court has ordered that notice be issued." Defendants cite to a case from this District where the court ordered deletion of the word "important" from a sentence in plaintiffs' proposed notice that read: "it is important that you be notified of the existence of this lawsuit so you can determine whether you wish to join." *Id.* (citing *Loera v. Cty. of Alameda*, 2023 WL 4551080, at *6 (N.D. Cal. July 13, 2023)). The Court agrees with Plaintiffs that their use of "important" is distinguishable as it does not suggest that the lawsuit itself and opportunity to join are important, but rather the documents themselves are important, and it may remain.

Next, Defendants argue that "the law is clear" that failing to "explain that opt-ins may be required to appear for deposition, testify in court, or potentially share in liability for payment of costs if Defendants prevail in the suit" deems Plaintiffs' notice deficient. ECF 29 at 28. Not so, and Defendants have provided "no Ninth Circuit or Supreme Court law requiring these disclosures be included in the notice." *Costa*, 2023 WL 8101980, at *8 n.4. Moreover, the Court agrees with the Costa court that such statements "are unnecessary and may chill participation." *Id.* Thus, the Court will not require Plaintiffs to add Defendants' proposed language regarding putative collective members' "rights, options, and obligations."

Finally, Defendants identify "various inaccuracies" in the notice. Defendants oppose the reference to Gilead and Kite as one entity, "Gilead Sciences." ECF 29 at 29. To avoid any risk of confusion by putative collective members, the Court orders Plaintiffs to replace references to "Gilead Sciences" with "Gilead and Kite." Defendants also argue the notice should not state that

7

1  "This notice summarizes the certification decision," ECF 22-8 at 6, and propose striking that
2  sentence. If Plaintiffs wish to keep that sentence, they shall amend it to state that the notice
3  "summarizes the conditional certification decision." Defendants further argue that the notice
4  should not warn that unless individuals opt in, they "will not be able to participate and share in any
5  monetary recovery obtained in this case." ECF 29 at 28 (citing ECF 22-8 at 2). Defendants
6  reason this is inaccurate because individuals may still obtain monetary recovery as class members.
7  However, because the Court has stayed the state law claims, opting in to the FLSA collective is an
8  employee's one available option for obtaining recovery, so the sentence may remain in the notice.

### ii.  Method of Notice

Plaintiffs request the Court approve their proposed notice and CTJ form and direct that notice be mailed, emailed, and texted to all putative collective members, with a reminder email, text, and postcard to be sent halfway through the notice period. ECF 22 at 18-19. Defendants do not object to notice by mail or email, and the Court grants Plaintiffs' requests to send notice by those means. However, Defendants argue dissemination by text is "unnecessary," ECF 29 at 26, citing to a series of out-of-circuit cases in which district courts have found that authorizing notice by text message implicated privacy and formality concerns and risked causing individuals to incur monetary charges. *Id.* But "given the ubiquity of text messaging" and "that the proposed contents of the message do not include any personal or financial information," *Costa*, 2023 WL 8101980, at *7, the Court finds it appropriate for Plaintiffs to notify putative collective members by text message. *See also Magana-Munoz v. W. Coast Berry Farms, LLC*, 2020 WL 3869188, at *7 (N.D. Cal. July 9, 2020). Defendants do not object to the issuance of reminder postcards, and "[t]he Court joins the many 'courts [that] have recognized that a second notice or reminder is appropriate in a FLSA action since the individual is not part of the class unless he or she opts-in," *Sanchez v. Sephora, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012); *see also Zeman v. Twitter, Inc.*, 2024 WL 4032051, at *5 (N.D. Cal. Sept. 3, 2024) (noting that courts regularly authorize reminder notices), and authorizes Plaintiffs' request to send reminder notices by postcard, email, and text message halfway through the notice period to collective members who have not yet returned CTJ forms.

8

Plaintiffs also request putative collective members be allowed to submit CTJ forms until 90 days after the issuance of notice. "Though opt-in periods vary, timeframes of sixty to ninety days appear to have become the presumptive standard in this District," *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *6 (collecting cases), and Defendants do not object to Plaintiffs' proposed opt-in period. The Court thus authorizes Plaintiffs' requested 90-day opt-in period. Plaintiffs also seek to include a QR code on the proposed notice and reminder postcard sent to putative collective members that directs to a website through which putative collective members can upload their CTJ forms. ECF 22-8, ECF 22-10. Defendants object, citing a Florida district court decision denying inclusion of a QR code on opt-in notices because there was "no reason to believe potential opt-ins cannot mail or email their consents to join." ECF 29 at 27 (citing *Chen v. Wow Rest. TH, LLC*, 2023 WL 3976005, at *6 (M.D. Fla. June 13, 2023)). The inclusion of a QR code may further facilitate the opt-in process, and the Court sees no reason to prohibit it, even if most collective members are capable of mailing or emailing their CTJ forms. However, the website to which the QR code directs may only contain information that has been approved by the Court and a method of downloading and submitting CTJ forms.

Plaintiffs also ask that within 14 days of this Court's order, Defendants produce, in data manipulatable format, the names, last known mailing addresses, last known telephone numbers, last known personal e-mail addresses, work locations, and dates of employment at each location for all putative collective members. Defendants oppose Plaintiffs' request for employees' work locations and dates of employment. Since the Court has stayed the state law claims, Plaintiffs no longer need to identify California employees covered by a Rule 23 class, and the Court sees no need for Defendants to produce that information. Plaintiffs also request that for those members whose notices are returned undeliverable, Defendants provide the last four digits of their Social Security numbers to facilitate determination of those individuals' correct addresses. Notice by mail, email, and text will provide sufficient redundancy, so the Court declines at this time to grant Plaintiffs' request. *See Costa*, 2023 WL 810980, at *8 ("[T]he redundancy built in through the text message notification will serve as sufficient back-up to ensure potential collective action members are notified.").

1   Defendants argue that producing this information in 14 days as Plaintiffs request is
2   "impracticable and unduly burdensome," and request 45 days instead. ECF 29 at 29. As the
3   Court is not requiring Defendants to produce employees' work locations and dates of employment,
4   which will reduce Defendants' burden, and because Defendants have pointed to no authority in
5   support of its requested amount of time, the Court finds it appropriate to grant Defendants 21 days
6   to produce this information. *See Costa*, 2023 WL 8101980, at *8 (ordering Apple to produce
7   information within 20 days); *Jimenez v. Haxton Masonry, Inc.*, 2021 WL 1041608 (N.D. Cal. Feb.
8   11, 2021) (ordering defendant to produce information within 21 days); *Guifu Li v. A Perfect*
9   *Franchise, Inc.*, 2011 WL 4635198, at *16 (N.D. Cal. Oct. 5, 2011) (same); *see also Basham v.*
10  *Tailored Living Choices, LLC*, 2024 WL 665189 (N.D. Cal. Feb. 16, 2024) (ordering defendants
11  to produce information to plaintiffs within 14 days); *Bautista-Perez v. JUUL Labs, Inc.*, 2021 WL
12  1639859, at *6 (N.D. Cal. Apr. 27, 2021) (same). Finally, Plaintiffs ask that Defendants send the
13  requested information both to them and to a third-party administrator, while Defendants argue the
14  information should only go to a third-party administrator. As Plaintiffs have not provided any
15  authority in support of their request, the Court denies it at this time. Defendants shall produce a
16  single list to the third-party administrator.

17  In sum, Plaintiffs may distribute their proposed notice and CTJ form by mail, email, and
18  text message, with a reminder email, text, and postcard to be sent halfway through the 90-day
19  notice period. The materials distributed to putative collective members may include a QR code
20  leading to a website that contains only Court-approved information and a method of downloading
21  and uploading the CTJ form. Within 21 days of this Order, Defendants shall deliver to a third-
22  party administrator, in data manipulatable format, the names, last known mailing addresses, last
23  known telephone numbers, and last known personal e-mail addresses of all putative collective
24  members.

25  **II.    CONCLUSION**
26  The Court **GRANTS** Plaintiffs' motion for notice to the collective with the modifications
27  discussed above. The collective definition, which may be modified by stipulation, is as follows:
28  All persons who worked for Gilead or Kite as overtime eligible employees and (1) were

granted an RSU award, had such RSU award vest after May 3, 2021, and recorded more than 40 hours in a week in at least one workweek between the date that RSU award was granted and the date that RSU award vested; or (2) received an incentive award after May 3, 2021, and recorded more than 40 hours in a week in at least one workweek during a period in which the award was earned.

Plaintiffs **SHALL** provide Defendants with the modified notice by March 27, 2025. Should there be disagreement about the modified notice, the parties **SHALL** meet and confer to attempt in good faith effort to reach resolution, and if no resolution is reached, the parties **SHALL** file a joint letter, no more than five pages, by April 10, 2025.

**IT IS SO ORDERED.**

Dated: March 20, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**